UNITED STATES of America, Appellant,

v.

Clarence JONES Jr., Defendant–Appellee.

No. 943, Docket 95–1498.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1996.

Decided Aug. 1, 1996.

**6**

Andrew H. Schapiro, New York City (The Legal Aid Society, Federal Defender Division Appeals Bureau, New York City, of counsel), for Defendant–Appellee.

Before: LUMBARD, MINER, and JACOBS, Circuit Judges.

LUMBARD, Circuit Judge:

The government appeals from an order entered on July 27, 1995 in the District Court for the Southern District of New York (McKenna, *J.*), dismissing with prejudice the indictment against Clarence Jones, under the Sixth Amendment's Speedy Trial Clause and Federal Rule of Criminal Procedure 48(b). We agree with the government that the district court abused its discretion by dismissing Jones's indictment. We reverse the court's Order and reinstate the indictment.

On August 29, 1990 shortly after 3 p.m., a man brandishing what appeared to be a gun robbed the Manufacturers Hanover Trust bank at Broadway and West 144th Street in Manhattan. Black-and-white film from surveillance cameras showed that the robber was wearing dark-colored shorts, a white T-shirt with a design on the front, and dark-colored jogging shoes. The robber's face was obscured by a hat and sunglasses.

According to New York City Police records, at approximately 3:19 p.m that same day, Clarence Jones was arrested on West 145th Street, about five blocks from the bank. A man who had been driving a car alerted the police after Jones pointed a gun at him, and demanded that he drive them away. At the time of his arrest, Jones was wearing black shorts, a white multicolor T-shirt, and blue jogging shoes. For reasons not disclosed in the record, Jones was released from custody some time after this arrest. Over a year later, in October 1991, a latent fingerprint found at the Manufacturers Hanover bank after the robbery was matched with Jones's.

In May 1991, Jones was arrested and charged with robbing a bank in Queens. His trial in the Eastern District in early 1992 resulted in a mistrial. At a retrial in August 1992, he was convicted of bank robbery, armed bank robbery, use of a firearm during

Stephen J. Ritchin, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Guy Petrillo, Assistant United States Attorney, of counsel), for Appellant.

a crime of violence, and possession of a firearm by a convicted felon.

Two months later, on October 29, 1992, while Jones was awaiting sentencing on the Queens robbery, a Grand Jury in the Southern District indicted him on a single count of bank robbery, in violation of 18 U.S.C. § 2113(a), for the August 1990 robbery of the Manufacturers Hanover Trust bank in Manhattan. The Southern District Assistant U.S. Attorney filed a detainer in the Eastern District on November 4, 1992, six days after the Southern District indictment. The district court found that, although prison officials did tell Jones there was a "Marshals' hold" on him, there was no evidence that he received a copy of the detainer.

On February 18, 1993, one day before Jones's sentencing hearing in the Eastern District, an Eastern District AUSA advised his lawyer, a Legal Aid defender, about the Southern District indictment. The next day, the Southern District AUSA also advised Jones's lawyer of the indictment, and Jones's lawyer asked her to send him a copy. As a result of her conversation with Jones's lawyer, the AUSA believed that counsel would convey both the contents of their conversation and a copy of the indictment to Jones. On February 19, 1993, Jones was sentenced to 30 years imprisonment for the Queens robbery.

On February 23, the Southern District AUSA sent Jones's lawyer a copy of the indictment and a letter asking when Jones wished to appear in the Southern District. Although defense counsel received this letter, neither he nor Jones responded to it.[1] Consequently, the AUSA concluded that Jones wished to put off appearing in the Southern District until he had appealed his Eastern District conviction.

A year later, in February 1994, we reversed Jones's Queens conviction and remanded for a new trial. *United States v. Jones*, 16 F.3d 487 (2d Cir.1994).[2] Shortly thereafter, the Southern District AUSA newly assigned to Jones's case and his counterpart in the Eastern District agreed that Jones would not be transferred to the Southern District so that his retrial in the Eastern District could go forward.

Jones's trial in the Eastern District in July 1994 resulted in a hung jury. At a July 1994 bail hearing after the mistrial, the Eastern District AUSA advised the district court of the Southern District detainer. Jones's attorney said that he was aware that the detainer and the indictment might exist but he was not certain of them.

In November, 1994, Jones was tried again in the Eastern District, on a single count of possessing a firearm as a convicted felon, and was acquitted.[3] Jones was then transferred to the Southern District on November 30, 1994 for his initial appearance to answer for the Manhattan robbery, 25 months after the indictment had been returned.

On January 30, 1995, Jones moved to dismiss the indictment for excessive delay. The court granted Jones's motion in May 1995, holding that the 25 months between his indictment and arraignment was excessive delay under both the Sixth Amendment's Speedy Trial Clause and Fed.R.Crim.P. 48(b). After the government moved for reconsideration, the court, on July 27, 1995, adhered to its decision. The government appeals, arguing that the delay was caused primarily by Jones's multiple criminal proceedings in the Eastern District.

■ Whether excessive delay violates the Speedy Trial Clause depends on a balancing of four factors: (1) the length and (2) reason for the delay, (3) whether the defendant timely asserted his rights, and (4) whether the defendant has been prejudiced by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101

1. Defense counsel stated that he did not remember ever receiving these documents. But after Judge McKenna issued his decision, counsel found them misplaced in his files.

2. We held there was insufficient proof that Jones's gun had traveled in interstate commerce and that the charge of possessing a gun as a convicted felon should have been severed because the jury's findings on the robbery counts may have been prejudiced by the admission of Jones's criminal record. *Jones*, 16 F.3d at 491, 493.

3. The government advised us at oral argument that Jones has since been convicted in the Eastern District of the other bank-robbery offenses.

(1972). The district court held that the only reason for the 25-month delay here was the government's negligence, that Jones had timely asserted his rights, and that such delay was presumptively prejudicial although no actual prejudice was shown. We disagree with each of these findings. We believe that the court abused its discretion by dismissing the indictment with prejudice. We reverse and remand for further proceedings.

During the 25 months from the date of the indictment to his initial appearance in the Southern District, Jones was involved in multiple criminal proceedings in the Eastern District: he was awaiting sentencing, was sentenced, successfully appealed his conviction, and went through two more trials. We do not believe the time Jones was involved in pre-trial, trial, and sentencing proceedings should be regarded as prosecutorial delay. *Rayborn v. Scully,* 858 F.2d 84, 90 (2d Cir. 1988) (delay due to "time expended by the government in processing [the defendant's] extradition papers, waiting for resolution of [other criminal] charges against [the defendant], and engaging in legitimate pre-trial proceedings" are " 'neutral reasons' " not attributable to the government), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *U.S. v. Nesbitt,* 852 F.2d 1502, 1513 (7th Cir.1988) ("[I]t is nigh unto impossible for a defendant to prepare for two judicial proceedings simultaneously."), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989).

As the Supreme Court has noted, a defendant cannot be tried in different districts at the same time. *Beavers v. Haubert,* 198 U.S. 77, 86, 25 S.Ct. 573, 575-76, 49 L.Ed. 950 (1905). A defendant must not only be present in court during the trial, but his presence is also needed during pretrial conferences and arguments on motions and hearings. The Probation Department, as well as doctors conducting psychiatric and physical examinations, may need access to him. Moreover, for an incarcerated defendant, each appearance in another district requires a transfer between jails.

The government acted in good faith. It was reasonable to delay the prosecution of the Southern District case until the Eastern District proceedings had ended. Once the Eastern District proceedings were ended,

Jones was almost immediately transferred to the Southern District.

The district court held that the only reason for the delay was the government's negligence. We disagree. The government filed a detainer within six days of Jones's indictment; notified Jones's counsel less than four months after the indictment; discussed the indictment with Jones's lawyer at that time; delivered a copy of the indictment to Jones's lawyer shortly thereafter; and expressly invited Jones in this letter to determine if he wanted to appear immediately in the Southern District.

■ We also disagree with the district court's decision to disregard completely the notice to Jones's lawyer, on the ground that the lawyer was only "appointed to represent [Jones] ... in the specific Eastern District case relating to the Queens robbery." Order of May 16, 1995 at 10-11. As both an agent and a fiduciary, Jones's counsel was obligated to keep Jones advised of the communications from the Southern District AUSA. This is especially true here where Jones's indictment in the Southern District was relevant to any decisions to be made regarding the proceedings in the Eastern District, such as whether to appeal, to cooperate with the government, or to negotiate for the disposition of the charges in both districts. *Cf. Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 92, 111 S.Ct. 453, 455-56, 112 L.Ed.2d 435 (1990) ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." (internal quotation marks omitted)). There was no reason why the government should not have believed that Jones's counsel would advise him of the status of the Southern District indictment.

Although Jones raised the Sixth Amendment issue at his first appearance in the Southern District in November 1994, he admits that he knew of the Southern District indictment at least four months earlier, when it was discussed in July 1994 at his bail hearing in the Eastern District. His failure to raise the issue earlier, although not a waiver of his rights, shows that the delay during this time is not attributable only to

government negligence; the prosecutors may reasonably have believed that Jones wished to wait until the Eastern District proceedings were completed before appearing in the Southern District. *See Barker,* 407 U.S. at 532, 92 S.Ct. at 2193 ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.")

■ We believe, on balance, that there was no prejudice to the defendant in delaying the proceedings in the Southern District. On the contrary, it afforded him a better chance of bringing the Eastern District proceedings to a more favorable conclusion. Although the district court agreed that Jones had not shown any actual prejudice to his defense, it held that the 25–month delay was *presumptively* prejudicial and that there might be possible prejudice in two ways.

■ First, because Jones had given notice that he might defend on the ground that he was in police custody during the robbery, "the passage of time would plainly impair his ability to locate witnesses to that fact." Order of May 16, 1995, at 16–17. But the police records indicate that Jones was taken into custody on the day of the robbery in circumstances which hardly help establish an alibi: he was arrested approximately five blocks from the bank, shortly after the robbery occurred, dressed like the robber, and allegedly attempting a carjacking. To the extent that the passage of time has dimmed the memories of witnesses to Jones's arrest, it was the government which was prejudiced as it planned to use evidence of Jones's arrest at trial. *See United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986) (delay is a "two-edged sword" because the "passage of time may make it difficult or impossible for the Government to carry [its] burden").

Similarly, the district court also suggested there might be prejudice because any possible "testimony placing [Jones] at the scene of the robbery, or elsewhere, on August [2]9, 1990," might be impaired to Jones's detriment by the delay. Order of May 16, 1996 at 17. The court pointed to the fact that in October 1992, the government attempted to have the bank's employees identify Jones from an array of photographs. However, the prosecution notes that such eyewitness testimony by those present at the bank is doubtful because the bank robber wore a hat and sunglasses. The government's critical trial evidence will probably be the bank's surveillance film, Jones's fingerprint found at the bank, and the police records that placed him a few minutes after the robbery five blocks from the bank wearing the same clothes as the bank robber and acting like someone fleeing a crime.

When regarding the time Jones spent in criminal proceedings in the Eastern District as prosecutorial delay, the only delay which can reasonably be attributed to the government is 12 months. In the absence of some additional compelling circumstance, such as bad faith by the prosecution or actual prejudice, we believe the district court's dismissal of the indictment with prejudice was an abuse of discretion. *Cf. Barker,* 407 U.S. at 533, 92 S.Ct. at 2193 (no speedy-trial violation despite a delay of "well over five years"); *Rayborn,* 858 F.2d at 89 (no violation despite a delay of "over seven years"); *United States v. Lane,* 561 F.2d 1075, 1078 (2d Cir.1977) (no violation despite a delay of 58 months); *United States v. Cyphers,* 556 F.2d 630 (2d Cir.) (no violation despite a delay of 33 months), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977); *United States v. Infanti,* 474 F.2d 522 (2d Cir.1973) (no violation despite a delay of 28 months); *United States v. Fasanaro,* 471 F.2d 717 (2d Cir.1973) (no violation despite a delay of over four years); *United States v. Saglimbene,* 471 F.2d 16, 17 (2d Cir.1972) (no violation despite a delay of six years), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973); *United States v. Schwartz,* 464 F.2d 499 (2d Cir.) (no violation despite a delay of four and a half years), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

Nor does the record disclose any circumstances warranting a finding that the government "unnecessarily delayed" Jones's

prosecution in violation of Rule 48(b)[4] of the Federal Rules of Criminal Procedure.

The Order of the district court is reversed, and the case is remanded for further proceedings.

---

**4.** The Rule provides:

[I]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment . . .

Fed.R.Crim.P. 48(b).