**UNITED STATES of America,**
**Appellee,**

v.

**Christopher T. BREEN, Defendant–**
**Appellant.**

**Docket No. 00–1241.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 2000.

Decided March 16, 2001.

Lauren Breen, Buffalo, NY, (Hughes and Breen, of Counsel), for Defendant–Appellant.

William J. Knapp, Rochester, New York, Assistant United States Attorney for the Western District of New York (Denise E. O'Donnell, United States Attorney for the Western District of New York, of Counsel), for Appellee.

Before FEINBERG, PARKER, Circuit Judges and COVELLO *, District Judge.

FEINBERG, Circuit Judge:

Defendant Christopher T. Breen appeals from a judgment of conviction entered in March 2000 in the United States District Court for the Western District of New York (Charles J. Siragusa, Judge). Following a jury trial, Breen was convicted on one count of conspiracy to possess with intent to distribute and to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841 (b)(1)(B) and 846; six counts of possession with intent to distribute and distribution of marijuana in violation of 21 U.S.C.

---

* Hon. Alfred V. Covello, Chief Judge of the United States District Court for the District of Connecticut, sitting by designation.

§§ 841(a)(1) and 841(b)(1)(B); and two counts of possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The jury acquitted Breen on the sixth count of the indictment that charged Breen used a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). The district court sentenced Breen principally to 240 months imprisonment followed by five years of supervised release. Breen's main argument for reversal is the district court's alleged failure to comply with the requirements of the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq. For the reasons stated below, we affirm.

## I.  Background

A brief review of the chronology of the case is necessary. Breen was arrested by DEA agents in California in February 1992. After questioning regarding his involvement in suspected drug-trafficking activity, Breen was released without charges. More than a year later, on August 10, 1993 Breen and co-defendant Shawn Leon were charged in a 10–count indictment with various drug-trafficking and firearm offenses. Breen appeared with counsel on August 16, was arraigned on the indictment and was released on bail. On September 21, Breen requested and was granted assigned counsel. Shortly thereafter, Breen was granted permission to proceed pro se with the assistance of assigned stand-by counsel, Andrew Fleming. On November 17, 1994 a superseding indictment was returned, adding co-defendant Boyd Blair McKinney and charging him on the conspiracy and firearm counts.

Nearly five years passed before a key conference of all the defendants with the court on May 25, 1999. However, because of various motions and the difficulty in extraditing co-defendant Leon from his native Canada, the government claims that, as of the May 25, 1999 conference, only four days of non-excludable time had run on the 70–day speedy trial clock. As will be seen below, Breen now disputes the accuracy of this calculation, despite his acquiescence to it in the district court.[1]

The purpose of the May 25 conference was to set a trial date and dispose of a few outstanding discovery matters. The district court clearly expressed concern about the age of the case.[2] The court noted the importance of expediting proceedings and stated that, notwithstanding two pending civil trials, he would fit the trial in his schedule on August 2, 1999 because "this case takes precedence." Thereafter, co-defendant Leon's counsel, Henry DePippo, objected, stating that because he had recently been brought into the case he would have great difficulty in preparing for trial by early August. To support his request, DePippo specifically cited the complexity of the case and the difficulty he anticipated in reviewing the record and the evidence. In addition, DePippo stated that he "would certainly waive any speedy trial consideration" if the district court would grant him the time he needed to prepare.

In response to DePippo's request, the district court inquired as to the consequences of co-defendant Leon's position for the other defendants' rights under the Speedy Trial Act. The district court raised the question whether the two other defendants were willing to accept a later trial date. Fleming, stand-by counsel for Breen (who was also present), stated that the August 2 date "would be very inconvenient" and that particularly "in light of [DePippo's] recent entry" into the case "I

---

1.  E.g., Breen stated in his pro se speedy trial motion dated November 4, 1999 in the district court that "there were 66 days left on the speedy trial clock on 5/25/99;" he also took the same position in open court 12 days later in response to a direct question from the judge during argument on the motion.

2.  At the May 25 conference, the district court stated "it bothers me that I am looking at a 1993 case ... a 1993 criminal case does concern me." .

don't believe *anybody* is going to object to a November 1 trial date ..." (emphasis added). With the consent of Breen's co-defendants' counsel and the government, the district court then set a trial date of November 1. Breen did not object. Indeed, when asked by the judge a few moments later if he understood that if he were not present on November 1, the "case would proceed in his absence," he replied that he did.

The trial date was later postponed one week to November 8, 1999. A few days prior to trial, Breen submitted a pro se motion to dismiss the indictment for violation of the Speedy Trial Act. In the motion, Breen argued that the district court's statements during the May 25 conference were not sufficient to exclude the subsequent time period and that therefore more than 66 days of non-excludable time had passed since the conference, compelling dismissal. During the trial, the district court heard argument on the motion in the absence of the jury and denied it in open court. In his ruling the judge elaborated on his May 25 decision to postpone the trial. He explained, among other things, that due to the concern voiced by defense counsel at that time, he had granted an exclusion of the time between May 25 and the start of trial pursuant to the "ends-of-justice" provision of the Speedy Trial Act, 18 U.S.C. § 3161(h)(8).

At trial, the government adduced evidence that on numerous occasions in 1991 and 1992 Breen conspired to ship and shipped large quantities of cocaine and marijuana from Del Mar, California to Buffalo, New York.[3] The government also introduced evidence that Breen kept a handgun at his California residence that he used in furtherance of his drug-trafficking activities. As already indicated, the jury returned guilty verdicts against Breen on all nine drug counts of the indictment but acquitted him on the firearm count. At

sentencing, the district court accepted the recommendation of the pre-sentence report and found, by a preponderance of the evidence, that Breen had mailed approximately 19 kilograms of cocaine and 306 kilograms of marijuana. The district court also found, by a preponderance of the evidence, that Breen had used a handgun in furtherance of his underlying drug offenses. After the district court sentenced Breen primarily to 240 months imprisonment, this appeal followed.

## II.  Discussion

On appeal, Breen principally argues that the district judge violated the Speedy Trial Act, primarily because he allegedly did not comply with the requirements of the ends-of-justice exclusion of 18 U.S.C. § 3161(h)(8). In addition, Breen argues that the court committed numerous other errors compelling reversal of his convictions. We consider these claims in turn.

### A.  Speedy Trial Act

■ The Speedy Trial Act provides in relevant part that "the trial of a defendant charged in an information or indictment ... shall commence within seventy days ... from the date the defendant has appeared before a judicial officer of the court in which such charge is pending." 18 U.S.C. § 3161(c). Absent exclusions, if the trial does not begin within this 70–day period, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2). As we have noted on prior occasions, the Act's time limit serves dual purposes: it protects "the defendant from undue delay in his or her trial and [ ] benefit[s] society by ensuring a quick resolution of criminal trials." *United States v. Kelly*, 45 F.3d 45, 47 (2d Cir.1995).

Although the policy of the Act is clear, Congress was aware of the practical difficulties of bringing a criminal case to trial.

---

**3.** The government produced shipping labels from packages that Breen had mailed. The labels indicated that Breen had shipped ap-

proximately 306 kilograms of marijuana and 19 kilograms of cocaine during the relevant period.

Thus, the statute provides for certain clearly defined periods that are excluded from the speedy trial time calculation. See 18 U.S.C. § 3161(h). Among these is the "ends-of-justice" exclusion under which the trial court may exclude time "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. §§ 3161(h)(8)(A). The statute identifies certain factors that the judge should consider in balancing these interests.[4] Importantly for the present case, the Act provides that an "ends-of-justice" exclusion may not be granted "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

Breen contends that the district court's findings on the record during the May 25, 1999 conference did not conform to the requirements of § 3161(h)(8)(A). Therefore, he argues that the time between that conference and the start of the trial in November may not be excluded. Breen does acknowledge that, during trial (more than 70 days after the May 25 conference),

the district court did conduct a detailed ends-of-justice analysis in response to Breen's pro se motion to dismiss dated November 4, 1999. However, Breen argues that this type of retroactive finding is prohibited by our decisions in *United States v. Tunnessen*, 763 F.2d 74 (2d Cir. 1985) and *Kelly*, 45 F.3d 45.

In *Tunnessen*, the defendants were arraigned in December 1983. They filed pretrial motions in January 1984, which were deemed submitted in early February. On the basis of the motions, the district court decided to hold a suppression hearing, which took place on May 29. Also on that date, the parties consented to an order excluding for speedy trial purposes the period from February 6 to May 29. On July 6, 1984 the judge filed a memorandum Decision and Order disposing of all outstanding motions and scheduling the case for trial on September 25. By the time of that order, 35 days had run on the speedy trial clock. We observed that unless the July 6 order could "properly be construed as an ends-of-justice continuance, the latest possible.trial date consistent with the Act's seventy-day limit was August 10, 1984." 763 F.2d at 75.

After the trial date was again postponed until early October, the defendants moved to dismiss the indictment on speedy trial

---

4. The various bases for ends-of-justice exclusions are set forth in 18 U.S.C. § 3161(h)(8)(B) which provides in relevant part:

    (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

      (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

      (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

      (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

      (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

grounds. In an opinion dated October 12, the district court denied the motion, stating in effect "that on July 6 it had in fact made an ends-of-justice determination [under § 3161(h)(8) ] in setting the trial date." *Id.* at 77. We reversed, holding that "the decision to grant an ends-of-justice continuance [must] be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period." *Id.* We stated in *Tunnessen* that in the July 6 Decision and Order "the district judge set defendant's trial date outside the limits of the Act without making *any* ends-of-justice findings on the record." *Id.* (emphasis added). Moreover, no party had requested that such a continuance be granted at that time. The earlier order of May 29 excluding time concerned only time already spent in preparation; it did not refer to the need for additional time beyond May 29. We therefore concluded that "[d]efense counsel's consequent inability to respond until after the fact to the district court's assertion that they needed more time renders problematic the task of evaluating the court's [October 12] ends of justice findings." *Id.* at 78. Despite the reversal, however, we were careful in *Tunnessen* to state that "the precise reasons for the decision [to grant a continuance] need not be entered on the record at the time the continuance is granted." Instead, we adopted the rule established in other circuits that, "[a]lthough the district court must decide initially whether to grant [an ends-of-justice] continuance, ... the purposes of the statute are satisfied by a subsequent articulation." *United States v. Brooks,* 697 F.2d 517, 522 (3d Cir.1982).

■ In *Kelly,* we applied the teachings of *Tunnessen* again in a situation where the district court set a trial date outside the Speedy Trial Act's time limit. Reviewing the record in that case, we determined that before granting the continuance, the district judge's findings referred only to the scheduling considerations of defense counsel and the government. 45 F.3d at 47. On those facts, we found unavailing the judge's later nunc pro tunc conclusion that the continuance had been granted in the "interests of justice". *Id.* Clearly under *Tunnessen,* contemporaneous findings devoid of any reference to speedy trial concerns and which relate exclusively to scheduling matters are not sufficient evidence of the district court's intention to grant an ends-of-justice continuance.

A careful examination of the record of the May 25 conference in this case reveals the following. In granting a continuance until early November, the judge was clearly focusing on the factors involved in applying the Speedy Trial Act. He acknowledged the importance of bringing the case to trial quickly but was mindful of defense counsel's need for additional time to prepare; the demands of the Speedy Trial Act were very much the subject of discussion with the court by defense counsel, whether retained, assigned or "standby". It is true that Breen did not affirmatively agree on the record with the statement of his standby counsel, Fleming, that he did not believe that "anybody" would object to a November trial date. Nor do we suggest that Breen "waived" his speedy trial claims since he had "no obligation to take affirmative steps to insure that [he] would be tried in a timely manner." *Tunnessen,* 763 F.2d at 79. We mention this only to make clear that everybody knew what was going on: The judge was determining how much time to exclude from the speedy trial clock after listening to all the parties. Indeed, counsel for co-defendant McKinney specifically referred to "exclusion of time". Moreover, the ends-of-justice analysis and exclusion of the period from May 25 to the November trial took place well before the speedy trial clock had run.[5]

Relying on *Tunnessen* and *Kelly,* Breen claims that during the May 25 conference, the district judge erred by never mention-

---

5. In view of Breen's admissions in the district court, see note 1 supra, there is no merit to

his argument to us that by May 25, many more than four days had run.

ing the words "ends of justice" and by failing to explicitly perform the requisite balancing between the "ends of justice served by the granting of such continuance" and "the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). However, as already indicated, this case is quite different from *Tunnessen* and *Kelly*. The parties and their counsel all understood from the May 25 colloquy fixing the trial date in open court that the judge was concerned over speedy trial considerations, that the time until trial was being excluded and that various interests, including the needs of counsel for more time to prepare, were being balanced against the concern over delay.

■ · We continue to stress that whenever possible the district court "should make the findings required by § 3161(h)(8)(A) at the time it grants the continuance." *Tunnessen*, 763 F.2d at 79. A contemporaneous finding on the record aids appellate review and also puts the parties on notice that the speedy trial clock has been stopped. *Kelly*, 45 F.3d at 47. But a trial is neither a game nor an obstacle course; failure to utter the magic words "ends-of-justice" at the time of ordering the continuance is not necessarily fatal. In short, we are convinced by the record that in granting the continuance on May 25, the trial court considered the factors indicated in § 3161(h)(8) and performed the required balancing of interests. We will therefore not upset the exclusion of time.[6]

B. Alleged juror misconduct

■ Breen cites two instances of alleged juror misconduct. The first relates to statements made by juror Harris and alternate juror Slayton. During the trial, Harris and Slayton each asked the court clerk whether the defendants would be taken into custody immediately if they were convicted. Upon learning of these comments, the district judge conferred with counsel and elected to discuss the matter individually with the jurors in the presence of counsel and defendant Breen. In response to the judge's questions regarding his statements, Harris elaborated: "they've been running free all this time and I was just wondering if they would be taken into custody if they are convicted." At the close of the colloquy with the jurors, Breen moved for a mistrial, or in the alternative for the dismissal of Harris and Slayton from the jury. The motion was denied.

■ We review the district court's denial of Breen's motion for dismissal based on alleged juror misconduct for abuse of discretion. *United States v. Thai*, 29 F.3d 785, 803 (2d Cir.1994). "[A] reviewing court will only find abuse of that discretion where there is bias or prejudice to the defendant." *United States v. Purdy*, 144 F.3d 241, 247 (2d Cir.1998) (internal quotation marks and citations omitted).

Breen argues that the jurors' comments demonstrated a bias and prejudgement of his guilt. According to Breen, such bias deprived him of a fair trial. We agree that these statements raised a question of potential bias. However, the district judge did not ignore this danger. Instead, in the presence of counsel and Breen, the judge questioned Harris and Slayton regarding their statements and received assurances that neither had made up his mind on the case or had discussed it with other jurors. The judge found that both were "forthright and candid," that Harris "remains a fair and impartial juror" and that "there is no indication that Slayton ... is in any way unfit to serve as a juror."[7] Because

---

6. Breen also argues that the district court improperly allowed stand-by counsel to waive Breen's rights under the Speedy Trial Act. Because we find that the court properly excluded the time following the May 25 conference under § 3161(h)(8), we need not address this argument.

7. Harris was already a member of the jury. Slayton was an alternate and never became a juror.

the trial judge is in the best position to assess the demeanor and credibility of the jurors, on these facts we do not find an abuse of discretion.

■ Breen's second allegation of juror misconduct involves the dismissal of another juror without defense counsel's consent. During trial, the juror informed the court that he had received word from his own attorney that the United States Attorney's office wanted to speak with him regarding an ongoing criminal investigation. Thereafter, the district judge met ex parte with a representative of the United States Attorney's Office to discuss the matter.[8]

After the ex parte meeting and in the presence of counsel and Breen, the judge questioned the juror about the truthfulness of his responses during voir dire, but did so without revealing any details of the ex parte communication. The juror conceded that he had lied during voir dire. He also told the judge in the presence of defense counsel that he had not spoken to any other juror about his problems with the government. The judge then dismissed the juror and replaced him with an alternate. The information revealed by the United States Attorney's Office was placed in a sealed record.[9]

Breen claims that the district court abused its discretion in deciding to dismiss this juror without the consent of defense counsel. He cites *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), in support of this argument. In *Remmer*, an unnamed person made a potentially prejudicial contact with a juror. The trial judge heard about it from the juror, advised the prosecutor, allowed the FBI to investigate and report to him and the prosecutor and then decided not to dismiss the juror. All of this was done without advising, or consulting with, defense counsel or the defendant, who learned about the incident only after the

jury returned its verdict. The Supreme Court remanded the case to the district court with directions to determine after a hearing whether "the incident ... was harmful to the [defendant]." 347 U.S. at 230, 74 S.Ct. 450.

The situation here is quite unlike what happened in *Remmer*. Counsel and Breen were informed of the problem, after which the judge questioned the juror in their presence and the juror admitted that he had lied on voir dire. It is true that Breen objected to dismissal of the juror but we have previously upheld dismissal of a juror in a case where all defense counsel were not given the opportunity to be heard. *United States v. Moten*, 564 F.2d 620, 629 (2d Cir.1977)("It is well understood that the substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of counsel."). We see no reason to deviate from this rule here.

■ Breen also argues that the judge abused his discretion by meeting ex parte with the United States Attorney's representative and not sharing with defense counsel thereafter the information he had learned about the ongoing criminal investigation. In view of the juror's admission to the judge, in the presence of counsel and Breen, that he had lied, it is clear that the judge did not abuse his discretion.

## C. Sentence enhancements

■ Breen claims that the district court violated his rights under the Fifth and Sixth Amendments by increasing his prison term based on the quantity of drugs he allegedly shipped and his alleged possession of a handgun. The district court made these findings at sentencing using a preponderance of the evidence standard. Breen contends that the resulting enhancements increased his sentence beyond the maximum otherwise applicable and

**8.** The representative was not the prosecutor against Breen.

**9.** We have examined the sealed record and find no evidence therein that the district judge abused his discretion in excusing the juror.

that, under the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), only the factfinder, using the beyond a reasonable doubt standard, can establish the factual basis supporting the imposition of such additional imprisonment.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed *statutory* maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63 (emphasis added). The lowest statutory maximum for Breen's conviction under 21 U.S.C. § 841(b)(1) is 20 years imprisonment, precisely the term he received post-enhancement.[10] According to Breen, the "maximum" sentence otherwise applicable would be the top-end of the guidelines range for the offense committed, absent the enhancements. Based on our reading of *Apprendi*, we reject this argument. The hypothetical "maximum" urged on us by Breen is simply not the statutory maximum and is not consistent with the language chosen by the Court. See *United States v. Garcia*, 240 F.3d 180, 181 (2d Cir.2001).

D. Defendant's other claims

Breen argues that the district court committed numerous other errors which require reversal of his convictions. The alleged erroneous rulings include the judge's decision not to dismiss the firearm charge on which Breen was ultimately acquitted; the denial of Breen's motion to suppress evidence; the refusal to grant Breen's request for funds for an expert witness; the denial of Breen's request for a hearing to determine whether the government's surveillance in this case had violated his rights under the Fourth Amendment; and the decision to allow the government to call witnesses participating in cooperation agreements. We have considered each of these arguments and find

that they are without merit; no further discussion of these issues is warranted.

We have considered all of the defendant's arguments and find that none of them require reversal. For the reasons stated above, we affirm all of Breen's convictions.

---

**10.** 21 U.S.C. § 841(b)(1) provides for various statutory maximums, ranging from 20 years to life imprisonment, based on the quantity of drugs involved.