UNITED STATES of America,
Plaintiff,

v.

Peter PAUL, Stephen Gordon, Jeffrey
Pittsburg and Charles Kusche,
Defendants.

No. CR 01–636.

United States District Court,
E.D. New York.

July 21, 2004.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, By Catherine L. Youssef, Esq., Assistant United States Attorney, Brooklyn, NY, for U.S.

Kostelanetz & Fink, LLP, By Robert S. Fink, Esq., Scott L. Black, Esq., Law Offices of Robert Patrick Sticht, By Robert Patrick Sticht, Esq., Los Angeles, CA, for Defendant Peter Paul.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a criminal prosecution alleging a fraudulent scheme to manipulate the market for stock in a company known as "Stan Lee Media." Presently before the court is the motion of Defendant Peter Paul ("Paul") to dismiss the indictment on the grounds that Paul's Constitutional and statutory rights to a speedy trial have been violated. Also before the court is Paul's motion to recuse this court from deciding the merits of the speedy trial motion. For the reasons set forth below, both motions are denied.

## BACKGROUND

### I. Paul's Activities Prior to His Indictment

In December 2000, Peter Paul left the United States and relocated to Brazil. The government alleges that Paul fled this country to avoid prosecution on the charges that were ultimately set forth in the present indictment. In March 2001, while Paul was in Brazil, talks between the government and Paul began during which Paul claims that he requested immunity from prosecution in exchange for certain information regarding high ranking government officials. These talks resulted in neither Paul's voluntary surrender nor any disposition of the criminal charges against Paul.

### II. Paul's Indictment and Proceedings in Brazil

On June 8, 2001, Paul and his co-defendants were indicted and charged with various violations of the United States securities laws. The indictment alleges a complicated manipulation of stock in over sixteen accounts and, inter alia, a conspiracy alleging overt acts over a two year period. On June 12, 2001, Paul's attorneys were informed of the indictment and the government advised that Paul return to the United States. Paul's attorneys began to negotiate conditions that would govern their client's return to this country, but no agreement was reached. Instead, the government imposed a voluntary return deadline of June 18, 2001. That date was ignored.

At proceedings held on July 2, 2001, attended by Paul's co-defendants, but not by Paul (who remained in Brazil) the government and defendants agreed that it was appropriate to designate this case as complex for speedy trial purposes. Following this proceeding, on July 18, 2001, the Supreme Court of Brazil issued an arrest warrant for Paul. He was arrested, pursuant to that warrant, on August 3, 2001 in Sao Paolo, Brazil. While in custody in Brazil, Paul was interviewed on two separate occasions by members of the Justice Department and by members of the United States Attorney's office for this District. The government contends that Paul was not offered a cooperation agreement during those interviews because he minimized his criminal conduct.

On September 25, 2001, the United States government began formal extradition proceedings against Paul in Brazil. Paul remained in Brazilian custody and took steps to oppose extradition under Brazilian law. Over one year later, on December 11, 2002, the Supreme Court of Brazil issued an oral vote in favor of Paul's extradition, but a published decree was necessary before the actual extradition could take place. It was not until June 30, 2003, that the decree was issued. Accordingly, Paul was not extradited to the United States until July of 2003.

### III. Paul's Appearances Before This Court

On September 15, 2003, Paul appeared before this court for the first time. At

that time, he was ordered detained pending trial. Paul also appeared before the court on September 22, September 24 and November 7, of 2003 and on February 3 and April 6 of 2004. At each of these appearances, counsel for Paul argued in favor of bail for his client. Both the Magistrate Judge who handled Paul's arraignment and this court refused to set bail and Paul remained in custody. In May of 2004, the defense team and the government agreed upon a bail package and Paul is no longer incarcerated.

It was not until bail was set that Paul's attorney moved to dismiss the indictment on speedy trial grounds. Prior to that time, at the November 7, 2003 conference, it was the government, and not Paul, that raised the speedy trial issue and asked the court to again declare this case as complex for speedy trial purposes. The court made that finding and Paul's counsel stated only that his client did not wish to waive his speedy trial rights. With the exception of this one statement, the time period between November of 2003 and the making of the present motion passed without the raising of any speedy trial issue. Indeed, at none of the appearances set forth above did Paul argue that this case was not complex or ask that his case be severed for an earlier trial date. To the contrary, on more than one occasion, defense counsel noted the complexity of this case and resisted the court's efforts to expedite the proceedings and set an early trial date.

Even at the November 2003 appearance, defense counsel was instrumental in prolonging the time in which his client would be brought to trial. Despite his statement that his client did not wish to waive his speedy trial rights and the court's expressed concerns as to the trial date, Paul's attorney requested four months for motions. According to the attorney, the extended motion schedule was necessary because there were over sixty boxes of discovery materials that had yet to be reviewed. This court refused to extend the motion schedule to four months, as this would result in an undue delay of the trial date. Again, at the February 3, 2004 conference defense counsel failed to raise any speedy trial concerns. In fact, counsel rebuffed the court's offer of an early trial date, insisting that additional time was necessary to prepare for trial. Now, with jury selection approximately six weeks away, Paul formally asserts his speedy trial rights.

## IV. The Motions

Paul's motion is based upon Constitutional as well as statutory grounds. Paul argues first that this court's initial designation of this case as complex is not binding upon him because he was not present at the time of that designation. Paul further argues that once he was before the court, the findings necessary to support the designation of the case as complex were not properly made. Finally, Paul argues that even if the finding made in November of 2003 was sufficient, that finding was erroneous because, as of that date, the case was no longer complex.

Paul also moves to recuse this court from deciding the speedy trial issue on the ground that this court lacks the ability to be impartial. The court will first consider the recusal motion.

## DISCUSSION

### I. The Recusal Motion

██ 28 U.S.C. § 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a). A judge's partiality is to be evaluated on an objective basis and recusal is required where there is an appearance of

bias or prejudice. *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Recusal is required where "an objective, disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal." *Diamondstone v. Macaluso,* 148 F.3d 113, 120–21 (2d Cir.1998).

■ Despite the broad wording of the recusal statute, the decision of whether or not to recuse is a matter that falls within the court's discretion. *See United States v. Yousef,* 327 F.3d 56, 169 (2d Cir.2003) (review of district court denial of recusal motion is for abuse of discretion). Certain scenarios require an exercise of that discretion while others do not. Recusal is required, for example, where a judge has a personal bias or prejudice against a party. *Diamondstone,* 148 F.3d at 120. Where, however, the motion to recuse is based upon the argument that the judge is ill equipped to review his own rulings in the case in which the motion is made, there is generally no basis to grant the motion to recuse. *United States v. Arena,* 180 F.3d 380, 398 (2d Cir.1999); *see Liteky,* 510 U.S. at 555, 114 S.Ct. 1147 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

■ Here, the motion to recuse is based not upon an allegation of personal bias against Paul. Instead, it is argued that this court's impartiality is to be questioned because the speedy trial motion requires the court to review its prior conduct. As a motion that calls upon the court to review its own ruling, it does not constitute a sufficient basis for automatic recusal. *See Arena,* 180 F.3d at 398. In light of the fact that this court has discretion over the recusal motion and, upon consideration of Paul's request, the court elects not to exercise its discretion to recuse itself. The motion to recuse is denied and the court will turn to the merits of the motion to dismiss the indictment.

## II. *Speedy Trial Motion*

### A. *Sixth Amendment*

#### 1. *Legal Principles*

■ The Sixth Amendment to the United States Constitution guarantees a defendant the right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). That right is imposed upon the States by the Due Process Clause of the Fourteenth Amendment. *Id.* The Constitution has not been interpreted to place a clearly defined time during which a criminal defendant must be tried. Instead, courts employ a flexible approach and consider speedy trial cases on an *ad hoc* basis by using a balancing test. Factors to be considered when determining whether there has been a deprivation of the Constitutional right to a speedy trial include the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *United States v. Blanco,* 861 F.2d 773, 777 (2d Cir.1988); *United States v. Jones,* 91 F.3d 5, 7 (2d Cir.1996); *United States v. Powell,* 1999 WL 32930 *2 (S.D.N.Y.1999).

#### 2. *The Sixth Amendment Right To A Speedy Trial Has Not Been Violated*

■ Turning first to the length of the delay in bringing Paul to trial, the court notes that it has been nearly thirty-two months since Paul's arrest and over eight months since the government was notified that Paul was available for retrieval from Brazil. While this delay might be so lengthy as to be presumptively prejudicial, it does not require a finding that there has been a Constitutional violation. Notably, in *Barker,* it was held that there was no

violation despite a delay of over five years. *See Barker,* 407 U.S. at 533–36, 92 S.Ct. 2182. Nonetheless, a delay such as that present here is arguably sufficient to trigger further inquiry into the remaining three *Barker* factors. *See Blanco,* 861 F.2d at 777. Consideration of those factors leads the court to conclude that there has been no violation of the Constitutional right to a speedy trial.

 First, as to the reason for the delay, the court has little difficulty concluding that the delay is largely attributable to Paul's own conduct in fleeing to Brazil and fighting the extradition process. Where, as here, it is the defendant's own conduct that is largely responsible for any delay, the defendant's speedy trial argument is "seriously undermined." *Blanco,* 861 F.2d at 778 (refusing to find Sixth Amendment violation where defendant was a fugitive living in Columbia). While the court recognizes the government's responsibility to make diligent efforts to bring a criminal defendant to trial, those efforts have been more than satisfactory in this case and cannot support any claim of bad faith on the part of the government. Indeed, documents before the court indicate clearly the government's continuing effort to have Paul either surrender voluntarily or submit to extradition and return to the United States. Under these circumstances, the factor of reason for the delay weighs heavily against a finding of a Constitutional violation.

The next *Barker* factor, *i.e.,* Paul's assertions of his right to a speedy trial, also weighs against Paul. The defense claim that Paul repeatedly asserted his right to a speedy trial is belied by the record in this matter. As demonstrated in greater detail below, Paul's attorney rejected, on more than one occasion, the court's attempt to set an early trial date and instead sought an extended period of time in which to submit motions and prepare for trial. At the conference held on February 3, 2003, it was Paul's attorney, who now complains that the court failed to make a proper finding of complexity, who referred to the "complexity" of this case. Transcript of Proceedings of February 3, 2003 at 3. It was also Paul's attorney who argued that the documents in the case were too complex to accommodate a short motions schedule. Transcript of Proceedings of November 7, 2003 at 8–11. In sum, the defense's assertions of a right to a speedy trial were not specific, nor did the defense team's conduct indicate any real intention to seek a speedy trial. The factor of whether or not there was a proper assertion of a right to a speedy trial therefore weighs against Paul.

 The final *Barker* factor, prejudice resulting from delay, also weighs against Paul. Prejudice sufficient to support a claim of denial of the Sixth Amendment right to a speedy trial requires a specific showing of how the passage of time has impaired the defendant's ability to prepare his defense. *Blanco,* 861 F.2d at 780 (rejecting "general" claim of prejudice); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) (claim rejected where defendant failed to show "specific and substantiated" prejudice arising from delay); *United States v. McGeough,* 1992 WL 390234 * 5 (S.D.N.Y.1992) (defendant raising Sixth Amendment challenge must "make a particularized showing of the prejudice involved").

 Paul fails to make any specific claim of prejudice. His claim of a harsh period of incarceration in Brazil does not rise to the level required to sustain a claim of a Sixth Amendment violation. *See McGrath,* 622 F.2d at 41 ("professions of anxiety and concern" rejected as "ephemeral" and not specific). While a lengthy period of incarceration is relevant to the

Sixth Amendment prejudice analysis, it is not dispositive. *See Barker*, 407 U.S. at 533, 92 S.Ct. 2182. Of greater importance is the extent to which that incarceration has impaired the ability to mount a defense against the charges in the indictment. Absent a finding of such impairment, incarceration alone cannot sustain a finding of undue prejudice. *See, e.g., Flowers v. Warden*, 853 F.2d 131, 133–34 (2d Cir.1988) (seventeen month period of incarceration insufficient, under facts of case, to establish prejudice).

Based on the foregoing analysis of the *Barker* factors, Paul's motion to dismiss the indictment on the ground that there has been a violation of his Sixth Amendment right to a speedy trial is denied.

### B. *The Speedy Trial Act*

#### 1. *Legal Principles*

■ The Speedy Trial Act (the "Act") requires that the government bring a criminal defendant to trial within seventy days of the first appearance before a judicial officer or the filing of an indictment, whichever is later. 18 U.S.C. § 3161(c); *United States v. Breen*, 243 F.3d 591, 594 (2d Cir.2001); *United States v. Tunnessen*, 763 F.2d 74, 76 (2d Cir.1985). The seventy day period may be tolled by the court if it finds, *inter alia*, "that the ends of justice served by the granting of such a continuance outweigh the best interest of the public and the defendant in a speedy trial." *Tunnessen*, 763 F.2d at 76.

The Act lists certain factors that may be considered by a trial court when determining whether time may be excluded from the speedy trial clock pursuant to the "ends of justice" exclusion. Among those factors are a finding that the case is "so unusual or complex ... that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established [by the

Act]." 18 U.S.C. § 3161(h)(8)(B). The Act requires the court to set forth, either orally, or in writing, the reasons for any "ends of justice" exclusion. *See* 18 U.S.C. § 3161(h)(8)(A).

■ The Act recognizes that the right to a speedy trial is the right of the defendant as well as a right of the public in general. Accordingly, a defendant will not be said to have waived that right by his conduct. *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir.1995). Despite the fact that the Act cannot be said to have been waived in all cases where the defense is responsible for delay, the conduct of the defendant and that of counsel at proceedings before the court can be taken into account when determining whether the court has entered a proper exclusion of speedy trial time. *See Gambino*, 59 F.3d at 360, *citing United States v. Kucik*, 909 F.2d 206, 211 (7th Cir.1990) ("Where defendant actively participates in a continuance ... he cannot then 'sand-bag' the court and the government by counting that time in a speedy trial motion."); *e.g., United States v. Bazuaye*, 2004 WL 784835 *4 (S.D.N.Y.2004) (where defense counsel made no objection, *inter alia*, to adjournment, that adjournment could not later be relied upon to support speedy trial motion).

■ Importantly, there are no "magic words" that must be employed to justify an ends of justice exclusion of time. *Breen*, 243 F.3d at 597. Instead, it is sufficient if, based upon the record and the conduct of counsel before the court, it is clear that the proper concerns were taken into account and the proper balancing of interests occurred. *Id.* In *Breen* for example, the Second Circuit held that the trial judge complied with the Act where the record revealed clearly that "the judge was concerned over speedy trial consider-

ations, that the time until trial was being excluded and that various interests, including the needs of counsel to prepare, were being balanced against the concern over delay." *Breen,* 243 F.3d at 597.

### 2. The Speedy Trial Act Has Not Been Violated

#### i. The Designations of Complexity

As noted above, this court declared this case as complex, for speedy trial purposes, for the first time in July of 2001. At that time, Paul was a fugitive. His co-defendants were before the court and agreed that the case was properly designated as complex.

Paul first appeared for arraignment in this jurisdiction on September 15, 2003. No issue was raised as to the designation of the case at that time. On November 7, 2003, however, fifty two days after Paul's initial appearance in this matter, and before the running of the Act's seventy day period, the government asked the court to again declare the case as complex. In response, the court reiterated its finding of complexity on the record. Without articulating any reason, Paul's attorney stated that he would not waive any speedy trial rights. The court responded that the case was complex and moved on to other matters, including the scheduling of motions and a trial date.

#### ii. The Defense Arguments

The defense argument here is three-fold. First, it is argued that the court's July 2001 declaration was insufficient to properly toll the speedy trial clock because it failed to comply with the statutory requirements necessary to render an ends of justice exclusion. It is further argued that even if the court's July 2001 declaration would have otherwise satisfied the Act, it had no bearing on Paul, who was not before the court until September of 2003.

The November 7, 2003 statement of complexity, when Paul was before the court, is alleged to be ineffective because it, too, failed to satisfy the statutory requirements for rendering an ends of justice exclusion. Finally, is argued that the November 2003 declaration is defective, in any event, because the permissible period for "complexity" had long since passed by the time of the declaration.

#### iii. Disposition of the Speedy Trial Act Motion

■ Defense arguments regarding the adequacy of the July 2001 ends of justice analysis are largely irrelevant with respect to Paul since the speedy trial clock did not begin to run against him until his first appearance before the court on September 15, 2003. As set forth in the Act, trials are to begin within seventy days of the filing of an indictment "or from the date the defendant has appeared before a judicial officer ... whichever date last occurs." 18 U.S.C. § 3161(c)(1).

Because it is clear that the speedy trial clock did not begin with respect to Paul until September 15, 2003, the court will not engage in a lengthy discussion of the July 2001 finding. The court notes, however, that both the court and counsel present at the time were well aware of the complex securities fraud allegations and the time needed to prepare for trial.

In view of the fact that Paul first appeared before this court on September 15, 2003, the question is whether the court engaged in the proper balancing of factors required to make a finding of complexity prior to the expiration of the seventy day speedy trial period. For the reasons set forth below, the court holds that the record developed on November 7, 2003, fifty two days after Paul's first appearance before this court, satisfied the Act.

There is no question but that the court and all counsel present on November 7, 2003 were aware of the Act and the need to properly exclude time. As noted above, there is no requirement that any magic words be uttered in connection with a finding that time is properly excludable. *See Breen*, 243 F.3d at 597. Here, as in *Breen* the record reveals this court's concerns over speedy trial considerations as well as an acknowledgment as to the complexity of the case. It was clear to all present, including, no doubt, Paul's counsel, that the time until trial was being excluded because of the complexity of the indictment and the need of defense counsel to prepare for trial. It was equally clear that those needs, expressed so vehemently by counsel, were balanced against the concern over the delay and the need for a speedy trial. The following colloquy, which took place on November 7, 2003 demonstrates the court's concern over holding a speedy trial and defense counsel's request to delay the proceedings so that he could adequately prepare.

MR. NEVILLE (defense counsel): Your Honor, we also mentioned a motion submission date. I don't think it was · set.

THE COURT: When do you want it?

MR. STICHT (defense counsel): Four months out.

THE COURT: Pardon?

MR. NEVILLE: Four months.

THE COURT: No way. Four months for the motion? Then we will run right into the trial. How much time do you need to make the motion?

MR. STICHT: The prosecution has allegedly 60 boxes of discovery materials we have never seen. We are just now getting to this. Mr. Paul is just now back in the United States. I don't see any way we can do it in less than three months.

THE COURT: You are make a motion for what? Or you don't know?

MR. STICHT: We are not clear yet, your Honor.

THE COURT: Make other motions after that? I will not sit for four months and do nothing in this case. Then you will make the motion. And they will have 30 days to answer, and then you take 15 days to reply and my trial date is gone. No way. I am going to trial on this case as designated. Put it in stone. We are going to trial. If you wish to make motions, make it as soon as possible. It will not delay my trial.

MR. NEVILLE: I agree, your Honor. Deadlines are good and gets us all moving. But in terms of our motions.

THE COURT: Make. all the motions you want to make that can be made within the next 30 days. If things develop that you have to make more motions, of course, make them. But we will not sit back and do nothing for more months.

MR. NEVILLE: Thank you.

MR. STICHT: That was not our suggestion. Thank you.

THE COURT: Motions to be made within 30 days. If you have a further application to be made based upon newly discovered, or you didn't get what you were supposed to, fine. Make another motion. The government will have fifteen days to answer, and then five days to reply. Any problem with that?

MR. CORNACCHIA (Assistant United States Attorney): No, your Honor.

THE COURT: Thank you.

Transcript of Proceedings of November 7, 2003 at 8–11.

As the foregoing demonstrates, this court considered and balanced the complexity of this case as well as the need of the defendant to adequately prepare for trial with the requirement of a speedy

trial. It was repeatedly asserted by the court that the trial could not be delayed indefinitely. Likewise, it was repeatedly asserted by the defense that more time was necessary to prepare for this complex securities trial. Accordingly, based on the statements made at the November 7, 2003 conference, which was only fifty-two days after Mr. Paul's first appearance before the court, this court engaged in an ends of justice analysis when deciding to continue the case to beyond the seventy day limit imposed by the Act. Thus, with only fifty-two non-excludable days between Mr. Paul's first appearance before the court and the time in which an adequate ends of justice analysis was made, it is clear that this defendant's Speedy Trial Act rights were not violated. .

Subsequent conduct confirms that this case was properly designated as complex. At the February 3, 2004 conference, when, according to the defense, the speedy trial clock had already run and the time for complexity had already passed, the defense continued to refuse an early trial date, as demonstrated by the following colloquy with the court:

THE COURT: Let me ask you this. How about if we move the trial up and we make it a quicker trial date than June. Would that help?

MR. STICHT: One of the problems is, your Honor, as I pointed out in our November status conference, they had allegedly 60 boxes of materials to review which defense had never turned over according to Rule 16.

THE COURT: You are telling me there is a long time to trial. I'm willing to cut it down. You are telling me you can't get ready during that time. I'm ready to make provisions to give you a quicker trial to your client.

Transcript of proceedings dated February 3, 2004 at 17–18.

In addition to holding that the November 2003 finding of complexity was sufficient to satisfy the ends of justice analysis, the court rejects the argument that it was improper to designate this case as complex as of that date because by that time the case was no longer complex. This argument relies on the contention that while this case may have been complex in 2001, it somehow lost its complexity by November of 2003. Defense statements on record, however, support a continuing finding of complexity. Indeed, as late as February of 2004, counsel continued to refer to the case as "complex" and rejected the court's invitation to expedite the trial date. As in earlier conferences, counsel pointed to the magnitude of the documents necessary to review and consider before trial could begin.

Even if this case was no longer "complex" as of November of 2003, an ends of justice exclusion would nonetheless be appropriate under the Act to allow counsel "reasonable time necessary for effective preparation." 18 U.S.C. § 3161(h)(8)(B)(iv) (including preparation time as proper factor to consider in ends of justice analysis even if case is not so complex as to fall within complexity clause of the Act). Paul's counsel's repeated statements regarding the documents to be reviewed prior to trial make clear that the "failure to grant a continuance would deny counsel for the defendant the reasonable time necessary for effective preparation ..." 18 U.S.C. § 3161(h)(8)(B)(iv).

Finally, to the extent necessary to clarify the court's thought process and the ends of justice analysis in which the court engaged at the November 2003 conference, the court sets forth the following. At the time of the November 2003 conference, when this case was designated as complex for Paul's purposes, the court considered both the complexity of the matters raised

in the indictment and the needs of the parties to prepare for trial. These needs were balanced against the rights of the defendant and the public (including the court) to have this case tried in a timely manner. At no point in time prior to the making of this motion, did the defense ever take issue with this court's designation. To the contrary, by their words and deeds, the defense team acquiesced in the finding of complexity. Further, defense counsel endorsed this court's analysis of the complexity of the case by seeking additional time in which to submit motions and prepare for trial.

### CONCLUSION

For the foregoing reasons, the court denies Defendants' motion to recuse as well as the motion to dismiss the indictment on speedy trial grounds.

SO ORDERED